NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SILVAN S. SMITH and JOY E. SMITH, Individual Plaintiffs, and PATRICIA CHATMAN, HORACE GREEN, JR., PHILLIP ALLEN, LEONARD EPPERSON, AND MICHAEL MARTINEZ, on behalf of themselves and all other similarly situated.<br><br>Plaintiffs,<br><br>v.<br><br>DAIMLERCHRYSLER SERVICES NORTH AMERICA, LLC.<br><br>Defendant. | Hon. Dennis M. Cavanaugh<br><br>**OPINION**<br><br>Civil Action No. 00-CV-6003 (DMC) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Plaintiffs, Silvan S. Smith and Joy E. Smith, et al. ("Plaintiffs") for (1) approval of the settlement of this class action with DaimlerChrysler Services North America, LLC ("Defendant") and (2) entry of an Order and Final Judgment dismissing the action.

I.   **Background**

On December 12, 2000, Plaintiffs brought this class action against Defendant under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§1691-1691(f), alleging that Defendant's retail credit pricing system for automobile purchases results in discrimination, specifically disparate impact, against African Americans and Hispanics. (Pl. Second Am. Compl.) Plaintiffs sought injunctive and

declaratory relief as well as monetary damages. Since then, the parties have filed various motions, entered amended pleadings, exchanged discovery, and engaged in settlement negotiations, the specifics of which need not be recounted. The parties reached a settlement on June 17, 2005 and the Court issued an Order of Preliminary Approval on July 29, 2005. As part of the Order, the Court certified the class for settlement purpose.[1] A Fairness Hearing was held by the Court on October 6, 2005. If approved, the proposed settlement agreement will completely resolve this action.

II.  **Settlement Agreement**

Plaintiffs have presented expert opinion setting the total value of settlement to the class to be $36.8 to $52.8 million. (See Plaintiffs' Memorandum of Law in Support of Final Approval of Settlement ("Ps' Memo") at 2.) The salient provisions of the settlement agreement are as follows:

(1) ***Offers of Credit***: Over a three-year term, Defendant will make a minimum of 875,000 pre-approved firm offers of no mark-up credit to African-American and Hispanic customers who are members of this class. Plaintiffs' expert estimates savings to the class of no less than $14.5 to $30.5 million on their auto finance loans. (Ps' Memo at 3.)

(2) ***Mark-Up Caps***: Defendant has agreed to set a maximum Mark-up Cap of two and one half (2.5%) percentage points above its buy rates for each credit tier on contracts of 60 months or less, a maximum Mark-up Cap of two (2.0%) percentage points on contracts greater than 60 months but less than or equal to 72 months, and a maximum Mark-up Cap of one and one quarter (1.25%) percentage points on contracts greater than 72 months for a period of three

---

[1] The Court certified the following class for settlement purposes: "All African-American and Hispanic customers who entered into Contracts that were assigned to DaimlerChrysler Services North America LLC or any of its predecessors or its successors in interest, during the period January 1, 1990 through the Effective Date of Settlement Agreement." (Order of Preliminary Approval of Settlement, July 29, 2005 at 2.)

years. (Ps' Memo at 3.)

(3) ***Plain Language Disclosure***: Defendant will alter its retail installment contract forms so as to plainly disclose to the consumer that the annual percentage rate on the contract may be negotiated with the dealer. (Ps' Memo at 3.)

(4) ***Education Assistance Plan***: Defendant will contribute $1.8 million in consumer education and assistance programs to educate and assist African-Americans and Hispanics with respect to credit financing. The funds will be allocated as follows: $600,000.00 to National Legal Aid and Defenders Association, $500,000.00 to the Rainbow PUSH Coalition, $400,000.00 to the Consumer Federation of America, and $300,000.00 to National Council of La Raza. (Ps' Memo at 4.)

(5) ***Anti-Tier Bumping Provision***: Defendant has agreed to an anti-tier bumping provision. Specifically, Defendant will monitor and send out notice to all its dealers that they no longer have authority to "bump-up" consumers to more expensive credit tiers that do not adequately reflect their credit status. (See Transcript of Fairness Hearing, 14:9-16.)

In addition, Defendant has agreed to pay $15,000.00 to Individual Plaintiffs Silvan and Joy Smith, and $10,000.00 to Class Representatives Patricia Chapman, Michael Martinez, Horace Green Jr., Phillip Allen and Leonard Epperson for their participation in this action. Joint Declaration of Class Counsel in Support of the Proposed Class Action Settlement and Request for Approval of Attorneys' Fees ("Joint Dec.") at ¶39. In return for the above, Individual Plaintiffs and Class Representatives will be releasing any and all claims they may have against the Defendant for monetary damages. Joint Dec at ¶39, n.3. The Class Members will not be releasing any claims they may have for monetary relief and may pursue individual claims if they so choose. Id.

### III.  Approval of the Settlement Agreement

Plaintiffs ask this Court to approve the proposed settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. A court asked to accept a proposed settlement agreement must find "that the settlement is fair, reasonable, and adequate." Lazy Oil Co. v. Witco Corp., 166 F.3d 581, 588 (3d Cir. 1999). When making such a determination a court should consider:

(1) the complexity, expense and likely duration of the litigation;
(2) the reaction of the class to the settlement;
(3) the stage of the proceedings and the amount of discovery completed;
(4) the risks of establishing liability;
(5) the risks of establishing damages;
(6) the risks of maintaining the class action through the trial;
(7) the ability of the defendants to withstand a greater judgment;
(8) the range of reasonableness of the settlement fund in light of the best possible recovery;
(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Girsch v. Jepson, 521 F.2d 153, 156-57 (3d Cir. 1975) (quotation omitted).

Furthermore, "the extraordinary amount of judicial and private resources consumed by massive class action litigation elevates the general policy of encouraging settlements to an overriding public interest." Austin v. Pennsylvania Dep't of Corrections, 876 F.Supp. 1437, 1455 (E.D.Pa. 1995)(quotation omitted). Accordingly, the Court will apply each Girsh factor to the case at hand.

(1)  The Complexity, Expense and Likely Duration of the Litigation

The first factor "is intended to capture the probable costs, on both time and money, of continued litigation." In re Lucent Technologies, Inc., Securities Litigation, 307 F. Supp. 2d 633, 642 (D.N.J. 2004) (quotation omitted). This litigation began nearly five years ago and the parties have already expended a great deal of time and energy. Nonetheless, the parties anticipate that if the litigation were to proceed there would be more discovery, numerous pre-trial motions, an extensive

trial followed by post-trial motions and an appeal. Such circumstances could extend the litigation another few years, a factor that weighs in favor of approval.

(2)     The Reaction of the Class to the Settlement

The second factor "attempts to gauge whether members of the class support the settlement." Id. at 643 (quotation omitted). Notices of the settlement were reported in a number of major newspapers in the United States in recent weeks. Additionally, pursuant to this Court's Preliminary Approval Order, a Court approved Notice of Settlement was published twice in USA Today as well as in the newspapers affiliated with the National Association of Hispanic Publications. The Notice published in the National Association of Hispanic Publications was published in both English and Spanish. In addition, the Settlement Agreement was posted in various places on the internet, including www.ecoa-settlement.com and the National Consumer Law Center's website. Plaintiffs received four items of correspondence that could be interpreted as objections to the Settlement. Plaintiff determined that these *pro se* objections misunderstood the nature and terms of the Settlement and were deemed to be without merit. The Court has reviewed these objections and agrees the objections misunderstood the proposed settlement. This factor weighs in favor of approval.

(3)     The Stage of the Proceedings and the Amount of Discovery Completed

Next, "[p]arties should have an 'adequate appreciation' of the merits in settling a case." Id. at 644 (quotation omitted). The litigation, though already protracted, is still in the pre-trial stage. Nonetheless, the parties have engaged in extensive discovery. Plaintiffs have reviewed voluminous amounts of documents and performed detailed statistical analyses of the comparative mark-up

between white and minority customers of Defendant. Additionally, Plaintiffs deposed a number of fact witnesses and obtained expert reports from several individuals. It is evident that the parties had a full appreciation of the merits during negotiations. This factor weighs in favor of approval.

  (4)(5) <u>The Risks of Establishing Liability and Damages</u>

In considering the fourth and fifth factors, a court should "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of immediate settlement." <u>Id.</u>. The parties concede that the outcome of the litigation is not certain. Plaintiffs would have to prove discrimination, a task especially difficult in a class action. Plaintiffs would have the burden of identifying the policy at issue and then demonstrating its disparate impact on the class. Plaintiffs would have to rely heavily upon statistical evidence by way of expert opinions with the uncertainty of how the Court or a jury would interpret such opinions. Additionally, even assuming that Plaintiffs were successful in proving disparate impact, Defendant would argue that its Mark-up Policy was a business necessity. With reference to damages, Defendant challenged Plaintiffs' theories of causation and damages, arguing that Plaintiffs suffered no "injury in fact" because, according to the Defendant, Plaintiffs were not charged more dealer reserve than similarly situated whites. Plaintiffs also concede that it is unclear at this time whether "damages" or a substitute form of monetary relief would be available in a class action brought under the ECOA. Thus, the risks of establishing liability and damages weigh in favor of approval.

  (6) <u>The Risks of Maintaining the Class Action Through the Trial</u>

The sixth factor evaluates the risks of maintaining the class throughout the trial. The

Court denied Plaintiffs' motion for class certification on December 30, 2004, having determined that the individual class representatives lacked standing to assert their claims. Plaintiffs filed a Motion for Reconsideration on January 13, 2005.[2] Because of the heightened standard of review applied to motions for reconsideration, there is considerable risk that Plaintiffs motion for reconsideration would be denied. Regardless, under F.R.C.P 23(a), the Court can decertify or modify a class at any time during litigation if it proves to be unmanageable, and proceeding to trial would entail the risk of decertification. As such, this factor weighs heavily in favor of settlement.

(7) The Ability of the Defendants to Withstand a Greater Judgment

The seventh factor "is concerned with whether the defendants could withstand a judgment for an amount significantly greater than the settlement." Id. at 336. Though Defendants could likely withstand a greater judgment, the request for a greater judgment would make Plaintiffs' case more difficult and less likely to be settled. As a result, this factor does not weigh against or in favor of approval.

(8)(9) The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and In Light of Litigation Risks.

Finally, for the eighth and ninth factors, a court should consider how "the present value of the damages the plaintiffs would likely recover if successful, appropriately discounted for the risks of not prevailing, . . . compare[] with the amount of the proposed settlement." In re Lucent, 307 F. Supp. 2d at 647. The best possible recovery, while arguably more than the settlement, is tempered by the risks of further litigation. The settlement provides immediate and substantial benefits for all parties and represents not only a likely recovery amount, but also a better option than little or no

---

[2] The motion was stayed pending settlement negotiations

recovery at all. The reasonableness of the settlement weighs in favor of approval.

In sum, the Court finds that the balance of factors weigh in favor of approval. The Court further finds that the settlement is fair, reasonable, and adequate. Accordingly, the Court approves the settlement agreement.

## IV. CONCLUSION

For the reasons expressed above, Plaintiffs' Motion for Final Approval of the Settlement Agreement is **granted.** The Settlement Agreement is hereby **approved**. An appropriate Order accompanies this Opinion.

_____
DENNIS M. CAVANAUGH, U.S.D.J.

Date: October 19, 2005
Original: Clerk's Office
Cc: All Counsel of Record
 The Honorable Mark Falk, U.S.M.J.
 File