NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SILVAN S. SMITH, and JOY E. SMITH, Individual Plaintiffs, and PATRICIA CHATMAN, HORACE GREEN, JR., PHILLIP ALLEN, LEONARD EPPERSON AND MICHAEL MARTINEZ, on behalf of themselves and all other similarly situated, | : : : : : : : : | **Hon. Dennis M. Cavanaugh**  **OPINION**  Civil Action No. 00-CV-6003 (DMC) |
| Plaintiffs, | : : | |
| v. | : : | |
| DAIMLERCHRYSLER SERVICES NORTH AMERICA, LLC, | | |
| Defendant. | | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Class Counsel for approval of attorneys' fees and reimbursement of expenses relating to the prosecution of this class action brought under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691, *et seq*. The motion is unopposed by Defendant DaimlerChrysler Services North America ("Defendant").

### I.      Background

Plaintiffs Silvan S. Smith and Joy E Smith, et al. ("Plaintiffs") brought this class action against Defendant under the ECOA, alleging that Defendant's retail credit pricing system for automobile purchases results in discrimination, specifically disparate impact, against African Americans and Hispanics. (Pl. Sec. Am. Compl.) The parties reached a settlement on June 17, 2005

-1-

and Order of Preliminary Approval was issued by the Court on July 29, 2005.  As part of this Order, the Court certified the class for settlement purposes.  A Fairness Hearing was held by the Court on October 6, 2005.  Plaintiff's motion for Final Approval of the settlement agreement was granted by this Court on October 19, 2005, and the Settlement Agreement has been approved in its entirety. Thus, because Plaintiffs have successfully resolved their clients' action, only the matter of attorneys' fees remains.

## II.    Fees & Expenses

Class counsel seek approval of its requests for fees in the amount of $7,500,00.00, the equivalent of 14% to 20% of the settlement.  See Plaintiffs' Memorandum of Law in Support of Class Counsel's Request for Approval of Attorneys' Fees and Reimbursement of Expenses ("Support Mem.") at 4.  Also, Class Counsel seeks reimbursement of expenses in the amount of $200,000. Support Mem. at 4.  Defendant does not oppose Class Counsel's motion.

Instead of creating a cash recovery , the Settlement Agreement provides for declaratory and injunctive relief.  However, Class Counsel submit that the Settlement creates a substantial monetary benefit for current and future African-American and Hispanic customers of the Defendant. Specifically, Class Counsel points to Plaintiffs' expert Dr. Mark Cohen, who has estimated the value of the settlement to the class to be $36.8 to $52.8 million. See Joint Declaration of Class Counsel in Support of the Proposed Class Action Settlement and Request for Approval of Attorneys Fees and Reimbursement of Expenses ("Joint Declaration") at ¶34.

In a class action settlement, it is within the discretion of the district court to set the amount of attorney's fees and expenses.  See Reinhart v. Lucent Techs., 327 F.Supp.2d 426, 431 (D.N.J.2004) (citing In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability

Litigation, 55 F.3d 768, 821 (3d Cir. 1995).) Importantly, "[t]he court must thoroughly analyze an application for attorneys' fees, even where the parties have consented to the fee award." Varacallo v. Massachussets Mut. Life Ins. Co., 226 F.R.D. 207, 248 (quoting General Motors, 55 F.3d at 820). The district court must ensure that the attorneys have not entered into a settlement agreement that provides less than optimal results for their client in exchange for good treatment when it comes to the matter of fees. Id.

Two methods have been established for evaluating the reasonableness of a fee application: percentage-of-recovery and lodestar. In re Safety Components, Inc. Securities Litigation, 166 F. Supp.2d 72, 94 n.5 (D.N.J. 2001)(citation omitted). The former awards a variable percentage of the amount recovered; the latter is a calculation based upon the number of hours reasonably expended by counsel. Id. "The percentage-of-recovery method is generally favored in cases involving a common fund, and is designed to allow courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure." Id. (quoting In re Prudential Co. of Am. Sales Practices Litig., 148 F.3d at 283, 333. (3d. Cir 1998). Although this action does not generate a common fund, "[c]ommon fund' principles and the inherent management powers of the court have been utilized to award fees to lead counsel in cases that do not actually generate a common fund." In re AremisSoft Corp. Securities Litigation, 210 F.R.D. 109, 128 (D.N.J.2002)(citing In re Gen. Motors Corp., 55 F.3d at 821.)

In Gunter v. Ridgewood Energy Corp, the Third Circuit set forth the factors a district court should consider in determining the reasonableness of a percentage fee award in a common fund case. 223 F.3d at 195 n.1. Those factors include: "(1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to

-3-

the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases." Gunter, 223 F.3d at 195 n.1. The factors "need not be applied in a formulaic way." Id. The Court will apply each factor to the case at hand.

### (1) Size of Fund and Number of Persons Benefitted

This Court must first consider "the size of the fund created and the number of persons benefitted." Gunter, 223 F.3d at 195 n.1. Here, although the settlement agreement does not create a cash recovery for the class, Plaintiffs have provided substantial statistical evidence and data showing the value of the settlement to be $36.8 to $52.8 million. Plaintiffs' expert submits that the monetary value to the class of the mark-up restrictions and pre-approved no mark-up credit offers in the settlement have a value of $27.3 to $43.3 million, with an estimated 47,642 to 69,542 class members sharing in these benefits. See Declaration of Dr. Mark Cohen, September 29, 2005 ("Cohen Dec.") at 4, Table 2. Dr. Cohen estimates the value of the Mark-Up Caps and pre-approval program to all African-Americans and Hispanic customers of the Defendant to be $83.6-99.6 million. Id. at 3, Table 1. Also, because the mark-up restrictions apply to all of Defendant's customers, an additional $104.7 million is expected to accrue to white customers of the Defendant. Id. at 5. The number of persons benefitted by the settlement is estimated to be 47,642 to 69,542 class members, as well as numerous additional future customers of Defendant. In light of the above, this factor weighs heavily in favor of approval of Class Counsel's application for attorneys fees.

### (2) Presence or Absence of Substantial Objections by Members of the Class to the Settlement Terms And/or Fees Requested by Counsel

Second, the Court must consider "the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel." Gunter, 223 F.3d at 195 n.1. Here, pursuant to the Court's Preliminary Approval Order, a Notice of Settlement was published twice in USA Today as well as in the newspapers affiliated with the National Association of Hispanic Publications. Support Mem. at 17-8. The Notice published in the National Association of Hispanic Publications was published in both English and Spanish. Id. In addition, the Settlement Agreement was posted in various places on the internet, including www.ecoa-settlement.com and the National Consumer Law Center's website. Id. The Notice of Settlement expressly advised the class members that they could object to the fee and expense application and detailed proper procedure for doing so. Id. Plaintiffs received four items of correspondence they felt could be interpreted as objections, none of which addressed the issue of attorneys' fees. Id. Because of the extensive publication of the Notice of Settlement, and the lack of objections to the application for attorneys fees, this factor weighs in favor of approval.

(3) Skill and Efficiency of the Attorneys Involved

Third, the Court must consider "the skill and efficiency of the attorneys involved." Gunter, 223 F.3d at 195 n.1. "The single clearest factor reflecting the quality of class counsels' services to the class are the results obtained." Cullen v. Whitman Medical Corp. 197 F.R.D. 136, 149 (E.D.Pa. 2000). As such, it is appropriate for the Court to look at Class Counsel's efforts in bringing this litigation to a successful conclusion.

Class Counsel details in its Joint Declaration the efforts it has gone to in pursuing this litigation. Specifically, Class Counsel notes that there was little, if any, developed case law for the

-5-

plaintiffs' disparate impact claims under the ECOA, and similar cases filed by other plaintiffs' attorneys had been litigated without success. See Joint Dec. at ¶16. Plaintiffs' successfully defended two motions to dismiss filed by opposing counsel. Id. at ¶17. However, the Court granted Defendant's motion for Partial Summary Judgment, dismissing Plaintiffs' Claims for injunctive and declaratory relief. Id. at ¶20. The Court also denied plaintiff's motion for class certification under 23(b)(3). Id. Plaintiffs' moved for reconsideration, but the motion was stayed due to settlement negotiations. Id. In light of these setbacks, Plaintiffs' successful negotiation of the settlement agreement is especially noteworthy.

Furthermore, opposing counsel was very experienced and skilled, adding to the burden this litigation already placed upon Counsel. Various attorney and firm biographies appended to the Joint Declaration evidence to great extent the background and accomplishments of the attorneys who litigated this action. See Joint Dec. Ex. 1-3.

As discussed above, the settlement agreement serves to benefit a great number of class members, and even non-class members will be positively effected by its terms. The fact that the agreement was obtained in the wake of a summary judgment motion against Plaintiffs speaks volumes as to the skill of Class Counsel. This factor weighs in favor of approval.

(4) Complexity and Duration of the Litigation

This was undoubtedly a lengthy and complex case. In particular, class counsel devoted significant resources to first obtain, and then decode, extensive amounts of data encrypted on Defendant's computer database that Plaintiffs saw as essential to proving their claims. Joint Dec at ¶21. Defendant fought vigorously against having to produce any of this evidence. Id.. In fact.

-6-

Plaintiffs' presented multiple requests for information from Defendant, extensive briefing before Judge Haneke, Judge Falk, and the Court, numerous court hearings and multiple appeals. Id.

With regard to duration of the litigation, this case was initially filed in December 2000. As such, Plaintiffs spent the last five years conducting formal discovery that included intensively analyzing computer data and reviewing voluminous amounts of documents, and conducting significant motion practice. Joint Dec at ¶16-26. In sum, this factor also weighs heavily in favor of approval.

(5) Risk of Nonpayment

The fifth factor for consideration under Gunter is "the risk of non-payment". Gunter, 223 F.3d at 195 n.1. Here, Plaintiff's invested significant amount of time and money in an inherently risky action with no guarantee of payment. Should Defendant have prevailed, Class Counsel would not have been reimbursed for any of their effort on the Plaintiffs' behalf. Furthermore, considering Defendant was represented by a nationally prominent law firm and was financially able to aggressively litigate this case, success was in no way guaranteed. As such, this factor weighs in favor of approval.

(6) Amount of Time Devoted to the Case by Plaintiffs' Counsel

Class counsel have devoted significant amounts of time in their active pursuit of this litigation and settlement. This factor weighs in favor of approval.

(7) Awards in Similar Cases

The fee application seeks fourteen to twenty percent of the settlement amount, a figure below the norm. See In re Cendant Corp., Prides Litigation, 243 F.3d 722, 736 (3d Cir. 2001) (fee awards

-7-

range from nineteen to forty-five percent); In re AremisSoft, 2002 WL 1769019, *26 (noting fee awards between one-third and one-half of the settlement); In re Safety Components, 166 F. Supp. 2d 72 at 101 (noting recent fee awards ranging between 27.5% and 33.8%). In fact, "[m]any courts, including several in the Third Circuit, have considered 25% to be the 'benchmark' figure for attorney fee awards in class action lawsuits, with adjustments up or down for significant case-specific factors." Varacallo, 226 F.R.D. at 249 (quoting In re Warfarin Sodium Antitrust Litig., 212 F.R.D. 231, 262 (D.Del.2002). Because Class Counsel is requesting an amount less than the award normally granted in such actions, this factor weighs in favor of approval.

Lodestar Cross-Check

The Third Circuit has suggested that it is advisable to cross-check the percentage award sought by counsel against the lodestar method of awarding fees so as to ensure plaintiff attorneys are not receiving excessive fees. Gunter, 223 F.3d at 199. Here, the percentage of recovery Class Counsel is seeking falls well below the norm, and litigation ensued for almost five years. This fact, when considered in combination with the other factors recounted above, satisfies the Court of the reasonableness of the fees. As such, the Court does not deem a cross-checking to be necessary.

Reimbursement of Expenses

Class Counsel seek reimbursement of expenses in the amount of $193,662.00. In a class action, counsel is entitled to reimbursement of expenses that have been sufficiently documented and reasonably and appropriately incurred in the course of the class action. In re Safety Components, Inc., 166 F. Supp.2d at 108 (citing Abrams v. Lightolier, Inc., 50 F.3d 1204, 1225 (3d Cir. 1995). Class Counsel has submitted two summaries that detail litigation related expenses. Joint Dec. at ¶14.

-8-

Specifically, the summary submitted by Bernstein, Litowitz, Berger & Grossman LLP and the National Consumer Law Center reflects expenses of $136,453.71. Joint Dec. at Ex. 4. The summary submitted by Tennessee Class Counsel reflects expenses in the amount of $57,208.29. Id. at Ex. 5. Each summary accounts for costs associated with court fees, service of process, on-line research, correspondence (telephone/mail/fax), photocopying, travel, and/or expert reports. Id. at. Ex. 4-5. None of the itemized expenses submitted by Counsel appear to be excessive. The Court is satisfied with the documentation submitted and finds the expenses reasonable and appropriate.

Summary

In sum, the Court finds that the balance of factors weighs in favor of approval. The Court finds the fee application is reasonable and appropriate. As a result, the Court approves the application for fees and expenses.

**III.    Conclusion**

For the reasons stated, it is the finding of this Court that Class Counsel's Application for Attorneys' Fees is **granted**. An appropriate Order accompanies this Opinion.

Dennis M. Cavanaugh, U.S.D.J.

Date:        October 19, 2005
Original:    Clerk's Office
Cc:          All Counsel of Record
             The Honorable Mark Falk, U.S.M.J.
             File

-9-